IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| JAMES IREIJO, | ) | CIVIL NO. 07-00290 JMS-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MARGARET ICHIYO AGNEW, ETC., | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS THOMAS
SLAVENS AND ELIZABETH SLAVENS' MOTION TO INTERPLEAD
PLAINTIFF/COUNTERCLAIM DEFENDANT JAMES IREIJO AND CROSSCLAIM
DEFENDANTS MARGARET ICHIYO AGNEW, ALSO KNOWN AS PEGGY AGNEW,
AND BRIAN AGNEW ON COUNTERCLAIM AND CROSSCLAIM, RESPECTIVELY**

Before the Court is Defendants/Counterclaim

Plaintiffs/Crossclaim Plaintiffs Thomas Slavens and Elizabeth

Slavens' ("the Slavenses") Motion to Interplead

Plaintiff/Counterclaim Defendant James Ireijo and Crossclaim

Defendants Margaret Ichiyo Agnew, also known as Peggy Agnew, and

Brian Agnew on Counterclaim and Crossclaim, Respectively

("Motion"), filed on August 8, 2007.  Plaintiff/Counterclaim

Defendant James Ireijo filed a joinder in the Motion on

September 5, 2007.  The Court finds this matter suitable for

disposition without a hearing pursuant to Rule LR7.2(d) of the

Local Rules of Practice of the United States District Court for

the District of Hawai`i ("Local Rules").  After careful

consideration of the Motion and the relevant legal authority,

this Court HEREBY FINDS AND RECOMMENDS that the Slavenses' Motion
be GRANTED for the reasons set forth below.

<u>**BACKGROUND**</u>

The instant case arises from the circumstances
surrounding the settlement of a state court action brought by
Margaret Ichiyo Agnew, also known as Peggy Agnew, and Brian Agnew
("the Agnews") against the Slavenses in the First Circuit Court,
State of Hawai`i ("the Related Action").  The Agnews alleged that
the Slavenses fraudulently induced Margaret Agnew to sell her
residence to them.  The Agnews and the Slavenses, through
counsel, ultimately reached a settlement in the Related Action
("Settlement Agreement").  The Slavenses agreed to pay the Agnews
a total of $360,000.00 for the residence.  Pursuant to the
Settlement Agreement, Title Guaranty Escrow Services, Inc. was to
release $93,826.14, currently held in an escrow account, to the
Agnews, and the Slavenses were to pay the balance in monthly
installments over ten years ("Monthly Payments").  The Agnews
agreed to pay $1,583.27 in rent to the Slavenses for the period
from June 19, 2007 until July 7, 2007.  The Agnews also agreed to
pay for certain repairs to the premises.  After there was some
indication that the Agnews were not going to honor the Settlement
Agreement, the Slavenses moved to enforce the Settlement
Agreement and the state court granted the motion on July 6, 2007.

Mr. Ireijo represented the Agnews in the Related

2

Action.  The Agnews, however, discharged Mr. Ireijo shortly after the parties reached the Settlement Agreement.  Mr. Ireijo brought the instant action to assert, *inter alia*, a claim for attorney's fees and costs that the Agnews own him for services he rendered in the Related Action.  Mr. Ireijo apparently named the Slavenses as defendants because he is asserting a claim to the Monthly Payments.  The Slavenses filed a counterclaim against Mr. Ireijo and a crossclaim against the Agnews, seeking a declaration of the parties' respective rights to the Monthly Payments and an order allowing them to make their payments to the Court.

In the instant Motion, the Slavenses argue that interpleader is appropriate because they are neutral parties holding funds - the Monthly Payments - to which they have no claims and to which the Agnews and Mr. Ireijo have conflicting claims.  If the Slavenses release the funds to either the Agnews or Mr. Ireijo, the other party may bring suit against them. Thus, the Slavenses are at risk of multiple lawsuits and double liability.

The Slavenses also argue that, if they deposit the Monthly Payments with the district court, the district court should deduct the $1,583.27 in rent and the amount for repairs to the property[1] from the monthly payments, if the Agnews do not

---

[1] According to the Slavenses, either they will come to an agreement on the amount with the Agnews or the state court will
(continued...)

3

make separate payments for those amounts.  The Slavenses state
that, as of the filing of the Motion, the Agnews have not made
the payments.

Finally, the Slavenses argue that they are entitled to
their attorney's fees and costs incurred in bringing the instant
Motion.  They contend that it would be inequitable to force them
to bear their expenses for the interpleader because it would
ultimately benefit the Agnews and Mr. Ireijo.  On September 7,
2007, the Slavenses submitted a declaration from their attorney
stating that the Slavenses incurred $2,800.52 in attorney's fees
and $91.24 in costs associated with the instant Motion.

There was no opposition to the Motion.  Mr. Ireijo
filed a joinder in the Motion on September 5, 2007.

**DISCUSSION**

I.   **Interpleader**

Federal Rule of Civil Procedure 22(1) provides, in
pertinent part:

> Persons having claims against the plaintiff may be
> joined as defendants and required to interplead
> when their claims are such that the plaintiff is
> or may be exposed to double or multiple liability.
> . . .  A defendant exposed to similar liability
> may obtain such interpleader by way of cross-claim
> or counterclaim.

This Court finds that the Slavenses may be exposed to double

---

[1](...continued)
determine the amount.

liability with respect to the Monthly Payments because both the
Agnews and Mr. Ireijo have claims to those sums.  The Slavenses
have asserted a counterclaim against Mr. Ireijo and a crossclaim
against the Agnews in order to determine their respective rights
to the Monthly Payments.  This Court therefore FINDS that
interpleader is appropriate.

## II.  __Attorney's Fees and Costs__

A court has discretion to award attorney's fees and
costs to the stakeholder in an interpleader action "when it is
fair and equitable to do so."  See Island Title Corp. v. Bundy,
488 F. Supp. 2d 1084, 1093-94 (D. Hawai`i 2007).  The test for
awarding attorney's fees and costs is similar to the standard for
determining whether interpleader is appropriate: a court should
award the stakeholder attorney's fees and costs if it determines
that the stakeholder should not be required to bear the risk of
multiple lawsuits or erroneous election.  See id. at 1095.  This
Court FINDS the Slavenses should not required to bear these risks
and therefore RECOMMENDS that the district judge award the
Slavenses their reasonable attorney's fees and costs.  The Court
now turns to the proper amount of the award.

The Slavenses request a total of $2,800.52 in
attorney's fees and $91.24 in costs associated with the instant
Motion.

> Because the interpleader plaintiff is supposed to
> be disinterested in the ultimate disposition of

5

the fund, attorneys' fee awards are properly
limited to those fees that are incurred in filing
the action and pursuing the plan's release from
liability, not in litigating the merits of the
adverse claimants' positions.  Compensable
expenses include, for example, preparing the
complaint, obtaining service of process on the
claimants to the fund, and preparing an order
discharging the plaintiff from liability and
dismissing it from the action.  Because the scope
of compensable expenses is limited, attorney's fee
awards to the 'disinterested' interpleader
plaintiff are typically modest.  Moreover, because
attorneys' fees are paid from the interpleaded
fund itself, there is an important policy interest
in seeing that the fee award does not deplete the
fund at the expense of the party who is ultimately
deemed entitled to it.

Id. at 1096 (quoting Trs. of the Director's Guild of

America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415,

426-27 (9th Cir. 2000)).  Further, such attorney's fees and costs

must be reasonable.  See id.

###    A.    Attorney's Fees

Under federal law, reasonable attorneys' fees are

generally based on the traditional "lodestar" calculation set

forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See

Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).

The court must determine a reasonable fee by multiplying "the

number of hours reasonably expended on the litigation" by "a

reasonable hourly rate."  Hensley, 461 U.S. at 433.  Second, the

court must decide whether to adjust the lodestar amount based on

an evaluation of the factors articulated in Kerr v. Screen Extras

Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been

subsumed in the lodestar calculation.   See Fischer, 214 F.3d at 1119 (citation omitted).

The factors the Ninth Circuit articulated in Kerr are:

> (1) the time and labor required, (2) the novelty
> and difficulty of the questions involved, (3) the
> skill requisite to perform the legal service
> properly, (4) the preclusion of other employment
> by the attorney due to acceptance of the case, (5)
> the customary fee, (6) whether the fee is fixed or
> contingent, (7) time limitations imposed by the
> client or the circumstances, (8) the amount
> involved and the results obtained, (9) the
> experience, reputation, and ability of the
> attorneys, (10) the "undesirability" of the case,
> (11) the nature and length of the professional
> relationship with the client, and (12) awards in
> similar cases.

Kerr, 526 F.2d at 70.   Factors one through five have been subsumed in the lodestar calculation.   See Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996).   Further, the Ninth Circuit, extending City of Burlington v. Dague, 505 U.S. 557, 567 (1992), held that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation. See Davis v. City & County of San Francisco, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993).   Once calculated, the "lodestar" is presumptively reasonable.   See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); see also Fischer, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

The Slavenses request the following lodestar amount for

7

work associated with the instant Motion:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Corey Y.S. Park | 0.5 | $375 | $ 187.50 |
| Sheryl L. Nicholson | 2.0 | $300 | $ 600.00 |
| Jason Zhao | 11.1 | $170 | $1,887.00 |
| | | SUBTOTAL | $2,674.50 |
| | GENERAL EXCISE TAX (4.712%) | | $ 126.02 |
| | **TOTAL REQUESTED LODESTAR** | | **$2,800.52** |

[Exh. A to Decl. of Sheryl L. Nicholson.]  Mr. Park was admitted
to the Hawai`i bar in 1975 and Ms. Nicholson was admitted in
1981.  Both are directors at their law firm.  [Id. at ¶ 5.]
Mr. Zhao is an associate who was admitted to the Hawai`i bar in
2001. [Id. at ¶ 4.]

        1.   **Reasonable Hourly Rate**

        In determining whether an hourly rate is reasonable,
the Court considers the experience, skill, and reputation of the
attorney requesting fees.  See Webb v. Ada County, 285 F.3d 829,
840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should
reflect the prevailing market rates in the community.  See id.;
see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir.
1992), as amended on denial of reh'g, (1993) (noting that the
rate awarded should reflect "the rates of attorneys practicing in
the forum district").

        Although it is usually required that counsel submit

8

additional evidence that the rate charged is reasonable, <u>see</u>
<u>Jordan v. Multnomah County</u>, 815 F.2d 1258, 1263 (9th Cir. 1987),
this Court is well aware of the prevailing rates in the community
for similar services performed by attorneys of comparable
experience, skill, and reputation.  Based on this Court's
knowledge of the prevailing rates in the community, this Court
finds that the requested hourly rates of $375 for Mr. Park, $300
for Ms. Nicholson, and $170 for Mr. Zhao are unreasonable.  This
Court finds the following to be reasonable hourly rates: Mr. Park
- $285; Ms. Nicholson - $265; and Mr. Zhao - $150.

### 2.   <u>Hours Reasonably Expended</u>

Beyond establishing a reasonable hourly rate, a party
seeking attorney's fees bears the burden of proving that the fees
and costs taxed are associated with the relief requested and are
reasonably necessary to achieve the results obtained.  <u>See</u> <u>Tirona</u>
<u>v. State Farm Mut. Auto. Ins. Co.</u>, 821 F. Supp. 632, 636 (D. Haw.
1993) (citations omitted).  A court must guard against awarding
fees and costs which are excessive, and must determine which fees
and costs were self-imposed and avoidable.  <u>See</u> <u>id.</u> at 637
(citing <u>INVST Fin. Group v. Chem-Nuclear Sys.</u>, 815 F.2d 391, 404
(6th Cir. 1987)).  A court has "discretion to 'trim fat' from, or
otherwise reduce, the number of hours claimed to have been spent
on the case."  <u>Soler v. G & U, Inc.</u>, 801 F. Supp. 1056, 1060
(S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed

9

"excessive, redundant, or otherwise unnecessary" shall not be compensated.  <u>See</u> <u>Gates</u>, 987 F.2d at 1399 (quoting <u>Hensley</u>, 461 U.S. at 433-34).  The Court finds the time spent by counsel to be manifestly reasonable and that the work items claimed are compensable in an interpleader action.  <u>See</u> <u>Island Title</u>, 488 F. Supp. 2d at 1096.

### 3.   **Total Lodestar Award**

Based on the foregoing, this Court finds that the Slavenses have established the appropriateness of an award of attorney's fees as follows:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| Corey Y.S. Park | 0.5 | $285 | $  142.50 |
| Sheryl L. Nicholson | 2.0 | $265 | $  530.00 |
| Jason Zhao | 11.1 | $150 | <u>$1,665.00</u> |
| | | SUBTOTAL | $2,337.50 |
| | GENERAL EXCISE TAX (4.712%) | | <u>$  110.14</u> |
| | **TOTAL LODESTAR AWARD** | | **<u>$2,447.64</u>** |

The Court declines to adjust this amount based on the <u>Kerr</u> factors and finds that this amount will not deplete the funds at issue in this case.  This Court therefore FINDS AND RECOMMENDS that the district judge award the Slavenses attorneys' fees in the amount of $2,447.64.

### B.   **Costs**

The Slavenses request $91.24 incurred for computer

10

research associated with the instant Motion.  [Exh. A to Decl. of Sheryl L. Nicholson.]  The Court finds this amount to be reasonably and necessarily incurred in this matter.  This Court therefore FINDS AND RECOMMENDS that the district judge award the Slavenses' requested costs in full.

## CONCLUSION

On the basis of the foregoing, this Court HEREBY FINDS AND RECOMMENDS that the district judge GRANT the Slavenses' Motion to Interplead Plaintiff/Counterclaim Defendant James Ireijo and Crossclaim Defendants Margaret Ichiyo Agnew, also known as Peggy Agnew, and Brian Agnew on Counterclaim and Crossclaim, Respectively, filed August 8, 2007.  Further, this Court RECOMMENDS that the district judge enter the following orders:

1.  Plaintiff/Counterclaim Defendant James Ireijo and Crossclaim Defendants Margaret Ichiyo Agnew, also known as "Peggy" Agnew, and Brian Agnew shall interplead their respective claims with respect to the Monthly Payments;

2.  Commencing on a date to be determined by the district judge, and on the 8th day of each month thereafter, the Slavenses are permitted to pay the Monthly Payments to the Clerk of the Court, until such time that this Court may order otherwise.  If the 8th day of the month is a Saturday, Sunday or Court holiday, the payment may be made on the first business day

11

thereafter;

      3.   The Slavenses are hereby awarded their reasonable attorney's fees and costs incurred herein, in the total sum of $2,538.88, which sum shall be deducted from the first installment of the Monthly Payments deposited with the district court;

      4.   The undisputed rental amount of $1,583.27 owed by the Agnews to the Slavenses under the terms of the Settlement Agreement shall be deducted from the second installment of the Monthly Payments deposited with the district court;

      5.   The amount representing the repair expenses owed by the Agnews to the Slavenses under the terms of the Settlement Agreement, which amount will be agreed to by the Slavenses and the Agnews or will otherwise be determined by the First Circuit Court, shall also be deducted from the Monthly Payments, following the Slavenses and the Agnews' agreement or the First Circuit Court's determination as to the amount is made;

      6.   The Slavenses shall provide the Agnews with an accounting of the deductions for the Slavenses' attorney's fees and costs, the rental amount and the repair expenses; and

      7.   The Slavenses are discharged from all further liability with respect to the conflicting and mutually exclusive claims made on the Slavenses for the Monthly Payments in the Related Action and in Mr. Ireijo's Amended Complaint.

      IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAI`I, September 26, 2007.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**JAMES IREIJO V. MARGARET ICHIYO AGNEW, ET AL; CIVIL NO. 07-00290
JMS-LEK; FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS THOMAS
SLAVENS AND ELIZABETH SLAVENS' MOTION TO INTERPLEAD
PLAINTIFF/COUNTERCLAIM DEFENDANT JAMES IREIJO AND CROSS-CLAIM
DEFENDANTS MARGARET ICHIYO AGNEW, ALSO KNOWN AS PEGGY AGNEW, AND
BRIAN AGNEW ON COUNTERCLAIM AND CROSSCLAIM, RESPECTIVELY**